IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL O'HARA, an individual on behalf, of himself and other individuals similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 9-1619 |
| CITY OF PITTSBURGH, | ) ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge

# FINDINGS OF FACT
# CONCLUSIONS OF LAW
# AND
# ORDER OF COURT

## SYNOPSIS

This is a case brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA") seeking liquidated damages for overtime pay pursuant to 29 U.S.C. §216(b). The sole issue is whether Defendant is entitled to the FLSA's safe harbor from liquidated damages pursuant to 29 U.S.C. §260. A non-jury trial was commenced on May 12, 2011, and concluded on May 13, 2011. At the conclusion of the trial, I directed the parties to submit proposed Findings of Fact and Conclusions of Law. The parties have done so. (ECF Nos. 37, 40, and 41-1). Having now fully considered the testimony of all witnesses and evidence admitted at trial, as well as the submissions of the parties, I make the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## **FINDINGS OF FACT**

1. Based on the Third Circuit case of *Wheeler v. Hampton Twp.,* 399 F.3d 238 (3d Cir. 2005), the parties concluded that the overtime rate for City of Pittsburgh Police Officers should be augmented by including a shift differential and longevity pay.

2. On January 13, 2006, Defendant signed a Letter of Understanding (Revised) that recognized longevity pay and shift differential pay at a basic median rate of 3% to be paid to the City of Pittsburgh Police Officers for overtime worked from January 13, 2006, forward.

3. The President for the FOP, Michael R. Haves, Jr., with the approval of membership, signed the Letter of Understanding in March of 2006.

4. The Letter of Understanding was signed by Mr. Havens, Bryan Campbell, Esq (counsel for the officers), Susan E. Malie, Esq. (City Solicitor), and Hugh McGough, Esq. (Assistant City Solicitor).

5. The Letter of Understanding was entered into to comply with the FLSA.

6. Donna DuBois was the Defendant's employee working on the implementation of the Letter of Understanding.

7. Ceridian was the outside payroll administrator for Defendant.

8. In February, 2006, at the direction of Ms. DuBois, Ceridian completed the steps necessary to implement the longevity into overtime pay.

9. In March, 2006, Ceridian started to work on applying the 3% shift differential.

10. In April of 2006, Ms. DuBois was terminated without notice.

11. Ms. DuBois did not have an opportunity to discuss any of her pending projects with any other staff member, including the Letter of Understanding, nor did Defendant attempt to contact her subsequently regarding the Letter of Understanding.

12. Defendant did not specifically assign the implementation of the Letter of Understanding to any other employee.

13. Two months after her termination, an employee of Defendant went through Ms. DuBois' desk but did not give the Letter of Understanding to Anna DeSarro, the employee who took over for Ms. DuBois.

14. Ms. DeSarro was informed by Chuck Tanczuk, an employee who had been assisting Ms. DuBois that the shift differential was still outstanding.

15. Ms. DeSarro did not know about the Letter of Understanding, so she had Ceridian program the shift differential at a previous rate schedule rather than the 3% agreed to under the Letter of Understanding.

16. No shift differentials were included in overtime pay for the first nine pay periods of 2006.

17. Beginning in May, 2006, longevity pay and the shift differential was included in overtime paid to Defendant's police officers, but the shift differential was calculated based on an improper rate formula.

18. Ms. DeSarro did not become aware of the Letter of Understanding until April of 2008, almost two years later.

19. In August, 2008, Ms. DeSarro asked Ceridian to change the rate to include the 3% constant shift differential rate for shifts except the "daylight" shift.

20. After continued discussions for over a year, on August 22, 2009, Defendant's counsel informed the FOP that as of the pay received on September 4, 2009, the overtime rate of pay would be computed using a constant shift differential of 3% of their annual budgeted salary for any overtime hour including the overtime hours worked during the "daylight" shift.

21. Payment for retroactive pay for calendar year 2009 was made in November 2009; however, calculations for retroactive payments for 2006-2009 were not made until September 2010 and the payment itself was not made until March 2011, six months later. In other words, generally speaking the majority of the back payments were not made for more than five (5) years.

22. The difference between the overtime shift differential paid and the overtime shift differential required by the Letter of Understanding was approximately $825,000.00.

23. Throughout this timeframe, beginning in 2006, Defendant was aware of its obligations under the Letter of Understanding since it signed the Letter of Understanding and by virtue of issues being raised by Plaintiffs' counsel, the FOP, and Defendant's counsel, and Defendant's own employees.

24. Yet, Defendant did not finally complete the implementation and retroactive payments of the 2006 Letter of Understanding until March of 2011, five years later.

## **CONCLUSIONS OF LAW**

1. In this case, Plaintiffs are seeking liquidated damages for overtime pay pursuant to 29 U.S.C. §216(b), and according to the parties, the sole issue is whether Defendant is entitled to the FLSA's safe harbor from liquidated damages pursuant to 29 U.S.C. §260.

2. Pursuant to the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…." 29 U.S.C.A. § 216(b).

3. However, pursuant to §11 of the Portal-to-Portal Act, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C.A. § 260.

4. The employer has the burden of establishing both good faith and reasonableness in its violation of the FLSA. If the employer fails to carry that burden, liquidated damages are mandatory. *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999); *Martin v.*

*Cooper Elec. Supply Co.,* 940 F.2d 896, 907 (3d Cir. 1991); *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.,* 83 F.3d 292, 298 (9th Cir.1996) (citations omitted).

5. In *Martin,* the Third Circuit explained:

> The *good faith requirement is a subjective one* that "requires that the employer have an honest intention to ascertain and follow the dictates of the Act." ... The *reasonableness requirement imposes an objective standard* by which to judge the employer's conduct ... Ignorance alone will not exonerate the employer under the objective reasonableness test ...
>
> If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages.

940 F.2d 896, 907-08 (3d Cir. 1991), *quoting Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 129 (3d Cir. 1984); *see also, Brooks*, 185 F.3d at 137.

6. To meet their burden of establishing subjective good faith, Defendant must establish "an honest intention to ascertain and follow the dictates of the FLSA" *Brooks,* 185 F.3d at 137.

7. To satisfy the objective reasonableness standard, Defendant must establish that it acted "'as a reasonably prudent person would have acted under the same circumstances.'" *Id.*, *quoting, Addison v. Huron Stevedoring Corp.,* 204 F.2d 88, 92 (2d Cir. 1953).

8. A defendant employer's burden of proof is "a difficult one to meet." *Id., quoting, Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987).

9. "'Double damages are the norm, single damages the exception....'" *Id., quoting, Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986).

10. In an effort to avoid liquidated damages, Defendant argues that it is entitled to a partial exemption pursuant to §207(k).

11. Section 207(k), however, is a tool for calculating the payment of overtime. 29 U.S.C. §207(k).

12. The calculation of overtime is not at issue in this case as the amount of underpayment of overtime paid on March 31, 2011, was stipulated to as accurate and, therefore, has no application to these conclusions of law.

13. Next, Defendant argues that liquidated damages are inappropriate because it made good faith efforts to comply with the FLSA. I disagree.

14. To begin with, taking 5 years to finally complete the implementation and retroactive payments of the 2006 Letter of Understanding is hardly "prudent," as Defendant suggests.

15. During the 5 years it took to complete making the overtime payments, Defendant's employees were aware of the Letter of Understanding and could have referred to it at any time, as a result reasonably prudent person should have known that it was violating the FLSA.

16. The significant delay of 5 years demonstrates a lack of good faith.

17. Similarly, Defendant's arguments that it "initiat[ed] remedial action each time any problem was revealed" or that "each time the possibility of problems…were raised it immediately examined the pay roll scheme" lack merit.

18. "The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute. Moreover, the employee need not establish an intentional violation of the Act to recover liquidated damages. Instead, the employer must affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements.'" *Martin,* 940 F.2d at 908, *quoting, Tri-County Growers, Inc.,* 747 F.2d at 129 (citation omitted).

19. Thus, I find that action of Defendant in responding to Plaintiffs' complaints is not actively attempting to ascertain and follow the dictates of the FLSA and, therefore, does not satisfy the good faith requirement.

20.     I also do not accept Defendant's attempt to shift blame on to Ceridian. The duty to follow the requirements of the FLSA fall squarely on Defendant.

21.     Finally, Defendant's argument that an employee's conversation with Jim Phelps, at the Department of Labor's Wage and Hour Division, in 2005 and 2006 were evidence of good faith also lacks merit. According to the evidence, the conversation with Mr. Phelps was in response to questions raised by Plaintiffs, so they were reactionary. Furthermore, they do not demonstrate reasonableness or good faith on the part of Defendant as the overtime issues went beyond 2006 (years after the conversations with Mr. Phelps ended) and were still not completely resolved until 2011.

22.     Consequently, I find that Defendant did not make subjective good faith attempts to ascertain the requirements of the FLSA and to comply with those requirements and that Defendant did not have objectively reasonable grounds for believing that its acts were not a violation of the FLSA.

23.     Therefore, Defendant failed to demonstrate that it acted in good faith so as to allow me to deviate from the mandatory liquidated damages.

24.     Accordingly, Plaintiffs are entitled to liquidated damages as prescribed by §216(b).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL O'HARA, an individual on behalf, )
of himself and other individuals similarly )
situated, )
                                                                          )
    Plaintiffs, )
                                                                          )
    vs. ) Civil Action No. 9-1619
                                                                          )
CITY OF PITTSBURGH, )
                                                                          )
    Defendant. )

AMBROSE, Senior District Judge

## **ORDER OF COURT**

AND now, this 9th day of September, 2011, it is ordered that verdict is entered in favor of Plaintiffs in the amount of $825,000.00 in the form of liquidated damages pursuant to 29 U.S.C. §216(b).

                                        BY THE COURT:

                                        s/ Donetta W. Ambrose
                                            Donetta W. Ambrose
                                            United States Senior District Judge